### CRAWFORD COUNTY.

JULY TERM, 1883, No. 57.                    FEBRUARY 6, 1884.

## Warder *et al. v.* Blair.

1. Where the manufacturer of a reaper sells it to a farmer, he impliedly warrants that it will do the kind of work for which it was made.

2. It must be capable of a fair ordinary average test by a farmer.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Crawford County.*

*Assumpsit* by Warder, Bushnell, and Glessner against Hugh Blair, to recover the price of a reaper alleged to have been sold and delivered by plaintiffs to defendant.

On the trial before CHURCH, J., the following facts appeared: The plaintiffs are manufacturers of mowers, reapers, and other agricultural implements, and W. A. T. Andrews is their general agent and salesman for Crawford county. In June, 1882, Andrews sold a reaper belonging to the plaintiffs, and of their manufacture, to the defendant. As to the conditions of the sale, the evidence was conflicting. The defendant and his son testified that Andrews had promised that " the machine would be a good one, and run light, and do its work in No. 1 good order, and give good satisfaction, and deliver its sheaves good;" that Andrews had further warranted it to do good work in every respect, and to be equal to and run as light as the McGranahan machine, and that if, when the machine was received, it did not do as it was agreed and warranted it should do, the defendant, after a trial of it, should be privileged to return it.

The defendant and a number of other witnesses testified that the machine was tried upon several days after defendant's receipt of it, in cutting wheat, and that its draught was much heavier than the McGranahan machine; that it did not do as good work as that reaper, and that it did its work badly. Some of the witnesses, upon whose farms the reaper had been used, testified that they would not have it in their fields. The defendant, after trying the machine about one week, returned it to Andrews, leaving it in front of the latter's house. One of defendant's witnesses, Tedlock, who had been at work on Andrews' farm at the time the machine was returned, testified that he had asked Andrews why it was Blair had brought the machine back; "he said he didn't know; says he, 'I understand it didn't do good work, or Mr. Blair didn't like it.' I asked him myself if Mr. Blair didn't get it on trial; he said he did; he said he got it to cut two or three pieces of grain; if it done good work he was to keep it; if it didn't do good work, he was to return it."

Andrews, testifying for the plaintiffs, denied that he had given any warranty with the machine, and that he had any conversation with Tedlock such as is noted above; he and other of plaintiffs' witnesses testified that the machine sold to Blair did good work, and that any bad results obtained from it were due to unskillful handling.

The plaintiffs submitted the following point:

" That if the jury find, from the evidence, that the sale was upon condition that the reaper should do good work,

184 SUPREME COURT [*Crawford*,

[Warder *et al. v.* Blair.]

the defendant is bound to show that the defective work complained of was through no fault of his, and that the reaper was not capable of doing good work by the exercise of ordinary skill in its management and use."

The Court answered this point as follows:

This point is affirmed.

[You will bear in mind, gentlemen, that a farmer buys a mower or reaper expecting it to be used by a farmer of average, ordinary intelligence in the use and manipulation of mowers and reapers. A farmer is not required, when he buys a machine, to have a learned machinist to fix it up and run it for him, and to see that the nuts and bolts are kept in their places. It is not necessary that a farmer should keep an agent of the manufacturer about him. It must be such a machine as is used by the ordinary, average farmer in the grain field. Otherwise a machine might be built of the best mechanism theoretically, but unfortunately of no use to the farmer, because he would not have that degree of skill as a machinist to run it. It must be capable of a fair, ordinary, average test by a farmer. Machines are made and sold to be used by farmers, and not by persons skilled above their fellows in mechanics.]

Exception. (Sixth assignment of error.)

The Court charged the jury, *inter alia*, as follows:

[A man sells a mowing machine or reaper to another, presumably with the understanding that the reaper will do the work for which it is made, for which it was bought, and for which it is sold.]

Exception. (First assignment of error.)

Verdict for defendant and judgment thereon; upon which plaintiffs took this writ, assigning for error, *inter alia*, the portions of the charge of the court included within brackets above.

*Geo. F. Davenport* for plaintiffs in error.

The plaintiffs alleged the sale of a Champion reaper to defendant. He admitted the sale, but alleged a warranty that it would do good work—as good as McGranahan's reaper—and a breach of the warranty. There were, therefore, but two questions in the case: First. Was there a warranty? Second. Was there a breach?

In the first assignment, the Court, in substance, charged the jury that there is, in the sale of a reaper, an implied warranty of fitness. That is not the law. A distinction is made where a thing is bought for a special purpose,

[Warder *et al. v.* Blair.]

and a special thing is bought: Port Carbon Iron Company *v.* Groves, 18 Sm., 149.

True, the Court afterwards instructed the jury there was an allegation of an express warranty; but if, under the evidence, they did not find that, still, under the charge, they might have found for the defendant under an implied warranty.

*Brawley & McClintock* for defendant in error.

The Court substantially charged the jury that the defendant's right to set up, as a defense, the imperfections of the machine, depended upon the existence of an "express warranty."

Whereas, under the circumstances of this sale, there would be an implied warranty by the plaintiffs that the machine would do the work for which it was made and purchased well—the original agreement being executory; if, upon receipt of the machine, it did not do the work for which it was made and purchased, it was the right of the vendee to return the machine, and release himself of the obligation of the contract: 1 Parsons on Contract, 586; Jones *v.* Bright, 5 Bing., 533; Laing *v.* Fidgeon, 6 Taunton, 108; Brown *v.* Edgington, 2 Man. and G., 279; Shepherd *v.* Pybus, 3 Man. and G., 868; Howa d *v.* Hoey, 23 Wend., 351; Hart *v.* Wright, 17 Wend., 267.

FEBRUARY 18TH, 1884.—PER CURIAM: The plaintiffs were not only the vendors, but they were the manufacturers of the machine sold to the defendant. Where a manufacturer of a reaper sells one to a farmer, we think it is sold and bought with the understanding that it will do the kind of work for which it was made. Here, however, there was evidence of an agreement on the part of the vendor that it would do as good work as another machine named. The jury have found that it was not as good, and did not do good work. The assignments are not sustained.

　　　　　　　　　　　　　　Judgment affirmed